UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **CHARLES MICHAEL DIXON** | * | **CIVIL ACTION NO. 11-0663** |
| **VS.** | * | **MAGISTRATE JUDGE HILL** |
| **KEVIN GROS OFFSHORE, L.L.C.** | * | **BY CONSENT OF THE PARTIES** |

### RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending before the Court is the Motion for Partial Summary Judgment filed by defendant, Kevin Gros Offshore, LLC ("KGO"), on May 4, 2012. [rec. doc. 21]. Plaintiff, Charles Michael Dixon ("Dixon"), filed opposition on May 23, 2012. [rec. doc. 23]. The Court held oral argument on June 20, 2012, after which I took the motion under advisement. For the following reasons, the Motion is **DENIED**.

### *Background*

Dixon alleges that he was injured on or about November 4, 2010, while working for KGO as a captain and assigned to work aboard the *M/V CHANTISE G* ("*CHANTISE G*"), an offshore utility boat. On the date of the accident, weather conditions deteriorated, ultimately causing the wheelhouse windows to be broken out. Dixon allegedly slipped and fell on a wet ladder resulting in his injuries.

On April 27, 2011, Dixon filed an action pursuant to the Jones Act, 46 U.S.C. § 688 *et seq.*, and/or admiralty and general maritime law, 28 U.S.C. § 1333 *et seq.*, against KGO for his personal injuries. On May 5, 2012, KGO filed the instant Motion for

Partial Summary Judgment on the grounds no genuine issue of material fact exists that it was not negligent. [rec. doc. 21].

## Summary Judgment Standard

Fed. R. Civ. Proc. 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The standard for granting summary judgment remains unchanged after the 2010 amendments.  Advisory Committee Notes to Subdivision (a).

## Analysis

KGO argues that no genuine issue of material fact exists that Dixon, as the captain of the vessel, had the duty to monitor weather conditions and, further, had the ultimate authority to decide whether to operate the vessel is such weather conditions.  Thus, it asserts, KGO is entitled to summary judgment on Dixon's claims of negligence based on the Jones Act, 46 U.S.C. § 30104.

Dixon was an experienced mariner and had been a licensed captain for over 20 years.  At the time of the incident at issue, he was employed as a captain by KGO and assigned to the *CHANTISE G*, an offshore utility vessel.  The *CHANTISE G* was equipped with a VHF radio and a computer system known as SAMMS, both of which are used to obtain weather reports and forecasts.

2

At the time of the incident at issue, the *CHANTISE G* was chartered to Arena Energy ("Arena"). On November 2, 2010, the vessel and her crew, including Dixon, took on personnel and equipment at a dock in Cameron, Louisiana, and departed for Arena's offshore platform, High Island 457, in the High Island block in the Gulf of Mexico. Prior to departing, Dixon checked the weather forecast using the SAMMS system, the results of which did not cause him concern.

The vessel proceeded to the Arena platform and worked throughout the morning of November 3, 2012. At noon, Dixon came on watch, relieving the first mate, Jeremy Danos ("Mate Danos"). Shortly after coming on watch, Dixon checked the weather and learned that conditions would worsen throughout the day.

At approximately 4:00 p.m., Dixon called KGO's office and spoke with dispatcher Mitch Danos ("Danos"), expressing his concerns that the weather was expected to deteriorate to such an extent that vessel operations might become unsafe. Danos stated that he wanted the vessel to remain on station. In addition, Dixon spoke with someone on the platform, who also advised him that he needed to stand-by the platform if possible. At that time, Dixon made the decision to stay offshore moored to the platform by the vessel's stern line because he thought he could ride out the deteriorating weather.

Between 8:00 p.m. and 9:00 p.m., Dixon obtained another weather report from the SAMMS system which showed increasingly deteriorating conditions with waves expected

in the 15-17 foot range. In light of the report, Dixon considered leaving the platform and heading toward shore.

Shortly thereafter, Dixon spoke again with Danos and informed him of his concerns regarding the weather. Danos stated that the vessel could ride out the weather by mooring to the platform by its bow line instead of its stern line. Dixon then moored the vessel to the platform by the bow.

Between 12:30 and 1:15 a.m. on November 4, Dixon finally decided that the conditions were unsafe for the vessel and ordered Mate Danos to navigate the vessel towards Cameron. Dixon then went off watch and went to bed. Mate Danos ran weather patterns, meaning that the vessel remained on location and traveled back and forth in an effort to better withstand heavy seas, between 1:15 a.m. and 4:00 a.m.

At approximately 4:00 a.m. on November 4, Dixon was awakened by a loud noise caused by one of the wheelhouse windows being damaged, possibly by a large wave. Dixon then returned to bed.

At 8:00 a.m., Dixon heard more windows breaking. At this point, Dixon arose and made coffee. After his second cup, he relieved the first mate at the wheel. The first mate then went off watch.

After operating the vessel for two to three hours, Dixon asked the deck hand to hold the wheel for a short time while he went to the rest room. While descending the stairs from the wheel house, Dixon alleges that he slipped on the steps which were wet

from the influx of water through the wheel house windows.  Thereafter, the vessel arrived safely in Freeport, Texas.

KGO argues that no issue of material fact exists that it was not negligent.  The Court disagrees.  Dixon testified that when he told Danos that weather conditions were becoming unsafe and he wanted to come in, Danos "encouraged" him to remain on station. Additionally, he testified that the person he spoke to on the platform told him to stay out there if at all possible.  When Dixon went to bed on November 4, he instructed Mate Danos to get into shallow water.  Instead of heading for shallow waters, Mate Danos ran weather patterns from 1:15 a.m. to 4:00 a.m., when windows began to break because of the weather.

Under the Jones Act, a seaman is entitled to recovery if his employer's negligence is the cause, in whole or in part, of his injury.  *Gauthreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997).  Further, a Jones Act employer is vicariously liable for the actions of its employee if the employee is acting in the business of and under the control of the employer at the time of the action at issue.  *Beech v. Hercules Drilling Co., LLC*, 786 F.Supp.2d 1140, 1144 (E.D. La. 2011).

Based on the evidence of record, a genuine issue of material fact exists as to whether it was Mitch Danos's decision or merely a "suggestion" to let the vessel remain at seas despite Dixon's concern about the bad weather.  Additionally, an issue of fact exists as to whether Mate Danos was negligent in failing to follow Dixon's order to head

for shallow water instead of running weather patterns.  Thus, the Court finds that genuine issues of material fact exists such as to preclude summary judgment.

### *Conclusion*

Based on the foregoing reasons, the Motion for Partial Summary Judgment filed by KGO is **DENIED**.

July 5, 2012, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE